*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HILL/KEARNEY/WATSON, Minors.

UNPUBLISHED
September 14, 2023

No. 363920
Wayne Circuit Court
Family Division
LC No. 2016-521897-NA

Before: REDFORD, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children, DKJ and JLW. On appeal, respondent argues, among other things, that the Department of Health and Human Services (DHHS) failed to make reasonable efforts at family reunification because its efforts did not reasonably accommodate respondent's intellectual disability. We agree. We therefore vacate the trial court's order terminating respondent's parental rights, and remand for further proceedings.

## I. BACKGROUND

This case arises from an original petition in which petitioner requested that the trial court take jurisdiction over the minor children and terminate respondent's parental rights. The children were living with their respective fathers at the time, none of whom were named as respondents.

The petition alleged that (1) respondent was homeless, (2) she had two other children currently in guardianships and had her parental rights to another child recently terminated in Ohio, (3) she had a lengthy history with Children's Protective Services (CPS) but failed to participate in and benefit from ordered services, and (4) she abandoned DKJ and JLW. The petition also acknowledged that respondent "suffers from an intellectual disability . . . ."

A referee authorized the petition, and the trial court ordered the children to be placed under petitioner's care and supervision (though released to their respective fathers), with respondent having supervised visitation.

Eventually, a combined adjudication trial and termination hearing was held before a referee. During the hearing, CPS investigator Tamika Lovejoy testified that respondent was

-1-

"[c]ognitively impaired," which was why a guardian ad litem (GAL) was appointed to assist her during the proceedings. Lovejoy testified that other services offered to respondent included "[p]arenting skills, housing, therapy services," and counseling. Lovejoy explained, however, that respondent was terminated from these services "for lack of participation." When asked whether respondent "received specialized services to address her cognitive impairments," Lovejoy responded "[y]es" and said that respondent "was offered mental health treatment," and was "provided with housing treatment, individual therapy, parenting classes, [and] things to help with her income . . . ." When pressed about how those services differed from typical services, Lovejoy said that, here, the DHHS "offered [respondent] help for her to apply to different housing, help with applications, things she didn't appear to do herself or understand to do herself and she declined those things." When asked what other services the DHHS offered to respondent that were tailored to reasonably address respondent's intellectual disability, Lovejoy said that she "had limited contact" with respondent and believed that those questions could be better answered by "the foster care worker" because "she has been on the case a little longer."

The foster care worker, Unika Simmons, was later asked what "specialized services" respondent received "recognizing that she has cognitive impairments," and Simmons testified that respondent "was offered individual therapy, substance abuse therapy, parenting classes," and "a Section 8 referral for housing." Simmons, like Lovejoy, also testified that she "offered to assist [respondent] with applications, if she needed the printed information," but respondent refused. When pressed about what "special services" were offered to respondent that were not typically offered to persons without an intellectual disability, Simmons testified that "there were no additional services provided."

During closing arguments, respondent's counsel stressed that the DHHS had not made reasonable efforts, highlighting Simmons' testimony that no specialized services were offered to respondent. In its ruling from the bench, the referee found that (1) the DHHS provided reasonable efforts "consistently with [*In re Hicks/Brown*, 500 Mich 79; 893 NW2d 637 (2017)]," (2) petitioner had established grounds for jurisdiction under MCL 712A.2, and (3) petitioner had established grounds for termination under MCL 712a.19b(3). The order signed and entered by the trial court following the hearing stated, "The Department has made efforts to provide [respondent] with services she could receive a [sic] benefit from," and checked a box indicating that reasonable efforts were made.

Later, a separate best-interests hearing was held. No additional testimony related to the DHHS's reunification efforts was taken at this hearing, but during closing arguments, respondent's counsel again emphasized that the DHHS had not made reasonable efforts because it had failed to reasonably accommodate respondent's intellectual disability. The trial court, however, rejected this argument, found that termination of respondent's parental rights was in DKJ and JLW's best interests, and terminated respondent's parental rights. This appeal followed.

## II. STANDARD OF REVIEW

"We review the trial court's findings regarding reasonable efforts for clear error." *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

III. ANALYSIS

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances under MCL 712A.19a(2)." *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019).[1]

In *In re Hicks/Brown*, our Supreme Court addressed how the DHHS's mandate to provide reasonable efforts dovetails with its responsibility to accommodate disabilities as required by the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. The Court explained that the ADA required public entities like the DHHS to make reasonable accommodations in their policies and procedures to avoid discrimination on the basis of disability, and thus:

> Absent reasonable modifications to the services or programs offered to a disabled parent, the [DHHS] has failed in its duty under the ADA to reasonably accommodate a disability. In turn, the [DHHS] has failed in its duty under the Probate Code to offer services designed to facilitate the child's return to his or her home, see MCL 712A.18f(3)(d), and has, therefore, failed in its duty to make reasonable efforts at reunification under MCL 712A.19a(2). As a result, we conclude that efforts at reunification cannot be reasonable under the Probate Code if the [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA. [*In re Hicks/Brown*, 500 Mich at 86.]

Applying that holding to this case, we conclude that the DHHS failed to provide specific services to accommodate respondent's intellectual disability, and thus failed in its duty to make reasonable efforts at reunification under MCL 712A.19a(2). Both Lovejoy and Simmons testified that the only specific service offered to respondent to accommodate her intellectual disability was that they offered to help respondent fill out housing applications, which respondent declined. Even had respondent accepted, however, it is unclear how this is a modification to the DHHS's standard procedures geared towards reasonably accommodating respondent's disability under the ADA. Further, while the trial court appointed respondent a GAL, it appears that the GAL's role was limited to assisting respondent in understanding the proceedings—nothing in the record suggests that the GAL assisted respondent in understanding the services being offered, how to engage in those services, or how to benefit from those services.

Petitioner highlights that this is not respondent's first interaction with CPS and the DHHS, and asserts that she has a long history of being offered services and failing to engage in them. However, considering the services previously offered to respondent, it is unclear how the DHHS modified its standard procedures in ways that were reasonably necessary to accommodate respondent's intellectual disability under the ADA. See *id*. (explaining that "efforts at reunification cannot be reasonable under the Probate Code if the [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the

---

[1] Neither the trial court nor petitioner ever contended that this case involved aggravating circumstances such that reasonable efforts were not required.

-3-

ADA"). More importantly, on the record now before us, particularly considering the testimony of Simmons and Lovejoy, it is clear that the DHHS did not modify its procedures to reasonably accommodate respondent's disability with respect to this most recent request for termination.

The children's GAL also filed a brief on appeal, in which the GAL noted, "It is concerning that [the] DHHS did not offer respondent specialized services if she was truly impaired," but noted that "the record is devoid of information pertaining to the extent of respondent's impairment." This is not a basis to conclude that the DHHS's efforts were reasonable, however. The DHHS knew that respondent had an intellectual disability from the beginning of these termination proceedings because it said as much in its original petition. "Once the Department knew of the disability, its affirmative duty to make reasonable efforts at reunification meant that it could not be passive in its approach as far as the provision of accommodations is concerned." *Id*. at 87-88. That "the record is devoid of information pertaining to the extent of respondent's impairment" is a result of the DHHS's passive approach to accommodating respondent's disability. Stated otherwise, it is indicative of the DHHS's lack of reasonable efforts.

Accordingly, we are definitely and firmly convinced that the trial court made a mistake when it found that the DHHS made reasonable efforts to reunify respondent and the children because "efforts at reunification cannot be reasonable under the Probate Code unless the [DHHS] modifies its services as reasonably necessary to accommodate a parent's disability." *Id*. at 90. "And termination is improper without a finding of reasonable efforts." *Id*. We therefore vacate the trial court's order terminating respondent's parental rights and remand for further proceedings.

Vacated and remanded. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Colleen A. O'Brien

-4-